# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KUNJI HARRISBURG, LLC, <br> **Plaintiff,** <br><br> v. <br><br> AXIS SURPLUS INSURANCE COMPANY, <br> **Defendant.** | CIVIL ACTION <br><br><br><br> NO. 19-1213 |

## MEMORANDUM OPINION

Plaintiff Kunji Harrisburg, LLC alleges that Defendant Axis Surplus Insurance Company breached the insurance contract into which the parties entered when Defendant denied coverage for damage to Plaintiff's hotel. Plaintiff further alleges that, in denying coverage, Defendant acted in bad faith in violation of 42 Pa. C.S.A. § 8371. Defendant moves for summary judgment on both claims.

### I.  FACTS

Plaintiff is the owner and operator of the Eisenhower Hotel and Conference Center, located in Gettysburg, Pennsylvania. On April 25, 2018, Plaintiff's property manager, Sapan Mehta, received a photo from a hotel employee showing water damage to the lobby. Mehta then inspected the roof and noticed missing shingles laying on the ground. After attempts to patch the roof proved unsuccessful, Mehta decided to have portions of it replaced.

Construction on the new roof began on May 7, 2018. In the course of replacing it, the contractors removed the top layer of roof, leaving intact what is known as the ethylene propylene diene monomer membrane. Nails were then driven into the membrane to secure the "tapered wood sleepers" that were acting as rafters for the replacement roof. A blue tarp was then placed over the membrane and sleepers.

1

According to Plaintiff, on May 14, 2018, a windstorm blew the tarp off, and water then entered the hotel, causing extensive damage. Two days later, Plaintiff submitted a Property Loss Notice to Defendant Axis Surplus, through whom it had an insurance policy for the property.[1] Defendant retained York Risk Services Group as an independent adjusting company, as well as consultants from J.S. Held and engineers from Wiss, Janney, Elster Associates ("WJE") to assist in handling the claim. J.S. Held and WJE both conducted site visits to the hotel in May. WJE concluded that the damage occurred because the roof was improperly installed and maintained at the outset, and then the replacement roof was improperly installed and incomplete, allowing the numerous holes in the membrane to let water through. The tarp, it further concluded, was neither part of the roof nor damaged.

Citing WJE's conclusions, on October 2, 2018, Defendant denied Plaintiff's claim. Plaintiff's policy covers "direct physical loss" to a building. That means that a qualifying event, such as a windstorm, must be what immediately causes the loss. Ordinary wear and tear, for example, is not a direct physical loss. The policy is subject to numerous exceptions, however; not all forms of direct loss are covered. According to Defendant, the causes of Plaintiff's damages are specifically excluded under the Policy's limitations clause, which reads as follow:

> C. Limitations The following limitations apply to all policy forms and endorsements, unless otherwise stated.
>> 1. We will not pay for loss of or damage to property, as described and limited in this section. In addition, we will not pay for any loss that is a consequence of loss or damage as described and limited in this section.
>> ***
>>> c. The interior of any building or structure, or to personal property in the building or structure, caused by or resulting from rain, snow, sleet, ice, sand or dust, whether driven by wind or not, unless:
>>>> (1) The building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain, snow, sleet, ice, sand or dust enters; or

---

[1] Plaintiff and Defendant dispute both what claims were made by Plaintiff and what claims Defendant addressed. This issue will be discussed further in detail. *Infra* Part III.

>> (2) The loss or damage is caused by or results from thawing
>> of snow, sleet or ice on the building or structure.

Under Plaintiff's policy, damage caused by a leak is only covered if the roof first sustained direct physical loss through a covered event (again, such as a windstorm). Thus, Defendant alleges, it denied Plaintiff's claim because the issues with the roof that led to the water damage were caused by installation defects and a partial roof repair, not a windstorm or other covered event.

## II. LEGAL STANDARDS

Summary judgment shall be granted if the "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). In reaching this decision, it must be determined "whether the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show that there is no genuine issue of material fact and whether the moving party is therefore entitled to judgment as a matter of law." *Macfarlan v. Ivy Hill SNF, LLC*, 675 F.3d 266, 271 (3d Cir. 2012). A disputed issue is "genuine" only if there is a sufficient evidentiary basis on which a reasonable factfinder could find for the non-moving party. *Kaucher v. Cty. of Bucks*, 455 F.3d 418, 423 (3d. Cir. 2006). A factual dispute is "material" only if it might affect the outcome of the suit under governing law. *Doe v. Luzerne Cty.*, 660 F.3d 169, 175 (3d Cir. 2011). In deciding a motion for summary judgment, all evidence and reasonable inferences from the evidence must be taken in the light most favorable to the non-moving party. *Macfarlan*, 675 F.3d at 271.

Plaintiff's bad faith claim must be proven by clear and convincing evidence. *Terletsky v. Prudential Prop. & Cas. Ins. Co.*, 649 A.2d 680, 688 (Pa. Super. 1997). This standard requires Plaintiff to show that the evidence is so "clear, direct, weighty and convincing as to enable a clear conviction, without hesitation, about whether or not the defendants acted in bad faith." *J.C. Penney Life Ins. Co. v. Pilosi*, 393 F.3d 356, 367 (3d Cir. 2004) (internal quotation omitted).

Plaintiff's burden at the summary judgment stage is thus commensurately high in light of the substantial evidentiary burden at trial. *Id.*

### III. ANALYSIS

#### A. Count I: Breach of Contract

Plaintiff argues that by failing to cover the hotel damage, Defendants breached the insurance contract. Defendant contends that summary judgment is appropriate because: (1) the blue tarp placed on top of the hotel is not considered a "roof" for the purposes of the exception to the Policy's rain limitation at Paragraph C.1.c.(1); (2) Defendant is not required to pay for any loss or damage to the interior of the property caused by or resulting from rain entering the property when the tarp was blown off the property; and (3) Defendant is not required to pay for any loss or damage that is a consequence of the loss or damage referenced above.

Ultimately, the breach of contract claim turns on whether the blue tarp was functioning as the building's roof at the time of the windstorm. According to Defendant, the only roof on the hotel at the time in question was the membrane, which was covered in holes during construction. The windstorm thus did not damage the roof; the roof had pre-existing issues that led to rain entering the hotel. Plaintiff, on the other hand, argues that the tarp was part of the roof structure; the wind blew the tarp off its holdings and thus damaged the outer layer of the roof; and that damage is the only reason the hole-filled membrane was exposed to rain.

Interpretation of an insurance contract is a question of law, and it is well established that "in construing any written instrument, and particularly an insurance contract, the instrument must be strictly construed against the writer." *Miller v. Boston Ins. Co.*, 218 A.2d 275, 277 (Pa. 1966). The definitions of "roof" proposed by the numerous experts provide minimal insight into whether the tarp, which lay on top of the membrane, may qualify as such. For example, WJE

Engineer Justin Spivey cited the definition from the Dictionary of Architecture and Construction, which defines roof as "the top covering of a building, including all materials and constructions necessary to support it on the walls of the building[]; provides protection against rain, snow, sunlight, extremes of temperature and wind." This definition highlights the ambiguity of the role of the tarp. According to Defendants, the membrane was the cover—the tarp was simply resting on top of the roof. But according to Plaintiff, the membrane was an inner layer and the tarp, in fact, was the outermost cover. And according to Plaintiff, it rained eight times between when the roof repair began and the May 14 incident, and no water damage occurred, indicating that, as this definition requires, the tarp provided protection against rain (until its functioning was damaged via displacement during the windstorm). Defendant's retained roofing expert from J.S. Held, Derek Boggi, offered an even less clarifying definition. He cited the National Roofing Contractors Association manual and Webster's Dictionary, which both define roof as "the cover of a building." Such a definition falls into the same ambiguities as discussed above—Plaintiff and Defendant offer different, plausible interpretations of what was acting as the "cover." And Plaintiff's interpretation of the tarp serving as the cover is supported by testimony from its expert, Andrew Weaver, an insurance adjuster with a background in construction. Weaver testified that a roof can have multiple layers. It is thus possible, under that conception, for both the membrane and the tarp to be serving as the roof. Ultimately, working within the definitions of "roof" provided by the experts, there is a disputed issue of material fact as to whether the tarp was the roof.

Looking to case law from other courts that have considered this issue only further highlights the fact-bound and uncertain nature of the question. Generally, the outcome of whether a tarp qualifies as a roof turns on the durability and relative permanence of the covering.

The Mississippi Supreme Court, for example, concluded that "construction or reconstruction must have reached the point where a reasonably prudent householder would consider [the temporary covering], if left in that condition for a month or months, or longer, as adequate against all risks of wind and rain which could be reasonably anticipated as likely to happen . . . ." *Camden Fire Ins. Ass'n v. New Buena Vista Hotel Co.*, 24 So.2d 848, 850 (Miss. 1946). Likewise, the Oregon Supreme Court concluded that a roof must be durable enough to serve its key purposes: "to cover and protect a building against weather-related risks that reasonably may be anticipated." *Dewsnup v. Farmers Ins. Co.*, 239 P.3d 493, 499 (Or. 2010).

A tarp that is part of a temporary roofing system thus has been found to be part of a roof. In *Dewsnup*, the defendant argued that the plaintiff's "roof" at the time in question was just a plastic tarp. *Id.* But the court noted that in fact the tarp was part of a covering that included a "plywood sublayer, a six-mil-thick polyethylene covering, and a system of staples, roof tacks, and wooden bats to secure the roof components in place." *Id.* According to the plaintiff's expert, the covering would have been enough to protect the home for "one or two years if necessary." *Id.*

On the other side, in *Camden*, the plaintiff's roof was being repaired and the workers opened a large hole through all layers of it. *Camden*, 24 So.2d at 849. An unexpected storm approached, prompting the workers to construct a two-layer felt covering that ultimately proved insufficient to protect the property from rain. *Id.* Hence, such a temporary covering "was not a roof blown off by the direct action of the wind, but, as stated, only a presently emergent effort to stop a hole by the men who made it." *Id.* at 850. *See also Valentino v. Harleysville Preferred Ins. Co.*, 2015 WL 7572410, at *7 (Pa. Super. Feb. 3, 2015) (holding that a tarp is not a roof); *Christ Church of Gospel Ministries v. Guideone Mut. Ins. Co.*, 2019 WL 6134793, at *2 (E.D. Mich. Nov.

6

19, 2019) (holding that because the plaintiff "did not replace the entire roof with sheeting amounting to a long-term roof replacement," the temporary cover during repairs was not a roof).

Plaintiff's temporary covering appears to fall somewhere between *Dewsnup*'s near-permanent structure and *Camden*'s hastily constructed attempt at a fix. Plaintiff did not wholly remove the roof and merely place a plastic tarp on top; instead, the existing membrane was left in place and wooden sleepers were installed as rafters. The tarp was then placed on top to cover any holes left in the membrane. And as noted, the tarp appears to have been sufficient to keep out rain on multiple occasions prior to the alleged windstorm. Whether the tarp was actually serving as the outer layer of the roof thus turns on factual and credibility issues, including how well the tarp was secured at the time in question (if at all) and which expert opinion is believed as to the durability of the roof structure.

### B. Count II: Bad Faith

Plaintiff next alleges that the denial of the claim was in violation of the Pennsylvania bad faith statute. *See* 42 Pa. C.S.A. § 8371. The statute permits the recovery of interest, punitive damages, and attorney's fees against the insurer if it is found to have acted in bad faith. *Id.* To recover, a plaintiff must show "[1] that the defendant did not have a reasonable basis for denying benefits under the policy and [2] that the defendant knew or recklessly disregarded its lack of reasonable basis in denying the claim." *Rancosky v. Was. Nat'l Ins. Co.*, 170 A.3d 364, 373 (Pa. 2017) (internal citation and quotation omitted). The first prong is an objective inquiry into whether a reasonable insurer would have denied payment of the claim under the facts and circumstances presented. *Id.* at 374. For the second prong, Plaintiff must show more than mere negligence or bad judgment. *Terletsky v. Prudential Prop. & Cas. Ins. Co.*, 649 A.2d 680, 688 (Pa. Super. 1994) (quoting *Black's Law Dictionary* 139 (6th ed. 1990)). Bad faith is not

7

restricted to just denying the claim; it can extend to the insurer's investigative practices. *Hamm v. Allstate Prop. & Cas. Ins. Co.*, 908 F. Supp.2d 656, 673 (W.D. Pa. 2012).

1. The April 25, 2018 Claim

According to Plaintiff, it requested payment from Defendant for two separate incidents of damage, one on April 25 and one on May 14. The notice of loss form Plaintiff submitted lists the date of loss as May 14, and the only date referenced in the denial of coverage letter is May 14. Plaintiff claims, however, that it adequately provided notice of the April 25 claim for wind damage to roof shingles, and Defendant acted in bad faith when it failed to address the claim. Defendant argues that no claim was ever made for the April 25 claim (and even if a claim was made, it properly addressed it in the denial letter).

An insurer can receive constructive notice of a claim. *Philadelphia Elec. Co. v. Aetna Cas. & Sur. Co.*, 484 A.2d 768, 772 n.11 (Pa. 1984). The determination of indirect notice, as opposed to direct notice via a claim form, is determined through a "case by case approach, taking into consideration the particular factual situation presented by the respective parties." *Id.* Fact issues surround whether Plaintiff provided reasonable notice in this case. Although it is undisputed that the notice of loss form did not explicitly mention the April 25 damage, it is likewise undisputed that the adjuster hired by Defendant received a text message photo of the April damage in July, and Plaintiffs submitted a timeline of damage that specifically addressed the April event. And WJE's report analyzed the cause of the April and May events separately. The record supports a conclusion that Defendant was aware of and fully considered the April event. But the record could also support a conclusion that Defendant simply viewed the April event as background, not a separate claim—particularly because the documents Plaintiff submitted to support its claim, including its loss calculation, just included one number, not separate documentation for each date.

8

Likewise, assuming Plaintiff did make the April claim, a reasonable jury could reach differing conclusions as to whether the denial letter addressed that claim. Defendant's denial letter specifically mentions only the May event; it never lists an April date. The letter also focuses primarily on the new roof construction, which began on May 7, as the cause of the loss. It never mentions any windstorm occurring prior to May. While Defendant maintains that an April claim was never properly made, it also argues in the alternative that, even if such a claim existed, its letter adequately addresses it. To that end, Defendant argues that the April event is not mentioned in the denial letter simply because, just as Plaintiff did not segregate out its claims, neither did Defendant. And it points to language in the letter referring to earlier wear-and-tear and defective installation as the reason why the roof needed to be replaced, indicating that it was denying the April claim as not covered. Whether the claim was addressed thus too is a disputed issue. If a jury were to conclude that Defendant was aware that Plaintiff had made a claim for the April damage, but ignored it, that could be seen as an objectively unreasonable, frivolous, intentional refusal to pay (or to otherwise resolve the claim in a timely fashion). *Terletsky*, 649 A.3d at 688; *see also Hamm*, 908 F. Supp.3d at 673 (extending bad faith to insurer's investigative practices).[2]

2. The May 14, 2018 Claim

Plaintiff also claims that Defendant's denial of the May 14, 2018 claim was in bad faith, because Defendant's investigation clearly established that the loss was covered. In the denial letter, Defendant articulated its reasons for denying the claim: water entered the roof not because

---

[2] Defendant also argues that it did not receive notice of the April claim until, at the earliest, July 2018, three months after it occurred. And during that three-month period, Plaintiff conducted repairs to the building that impeded Defendant's ability to assess the earlier damage. Delay in reporting a claim is not by itself sufficient to hold that the insured cannot recover. *Brakeman v. Potomac Ins. Co.*, 371 A.2d 193, 196 (Pa. 1977). The insurer must also show it is in a "substantially less favorable position" than it would have been with timeline notice. *Id.* The record is not clear as to when precisely Plaintiff shared the timeline of events that contained information about the April claim and the timing of certain conversations surroundings the claim. Additionally, the record does not conclusively establish whether Defendant is now in a substantially less favorable position. Summary judgment on this issue is thus not warranted.

wind damaged it, but because there were hundreds of holes in the membrane as a result of construction. Plaintiff disagrees with Defendant's understanding of what constituted the roof. But as discussed above, *supra* Part III.A, courts have not been in unanimous agreement about when a tarp placed on a building that was undergoing repairs was sufficient to qualify as a roof. *See, e.g.*, *Valentino*, 2015 WL 7572410, at *7; *Christ Church of Gospel*, 2019 WL 6134793, at *2. An insurer who makes a reasonable legal conclusion based on an uncertain area of the law has not acted in bad faith. *Brown v. Progressive Ins. Co.*, 860 A.2d 493, 501 (Pa. Super. 2004). With no binding guidance from the Pennsylvania Supreme Court or the Third Circuit, and numerous fact-intensive cases on the subject, Defendant reasonably interpreted the membrane, and not the tarp, to be the roof. Even if that call is ultimately found to have been incorrect, Defendant did not act in bad faith by denying the claim.

### IV. CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment will be granted in part and denied in part. An appropriate order follows.

**March 18, 2020**                  **BY THE COURT:**

**/s/Wendy Beetlestone, J.**

**_____**
**WENDY BEETLESTONE**